[No. B202888. Second Dist., Div. Three. June 25, 2009.]

STATE FARM GENERAL INSURANCE COMPANY, Plaintiff and Appellant, v.
MIMIN MINTARSIH, Defendant and Appellant.

COUNSEL

Horvitz & Levy, Barry R. Levy, Daniel J. Gonzalez; Grant, Genovese & Baratta, James M. Baratta and Jason S. Roberts for Plaintiff and Appellant.

Garrard & Davis, Donald A. Garrard; The Ehrlich Law Firm and Jeffrey Isaac Ehrlich for Defendant and Appellant.

OPINION

**CROSKEY, J.**—State Farm General Insurance Company (State Farm) and Mimin Mintarsih both appeal a judgment in a declaratory relief action. Mintarsih sued State Farm's insureds, Dennis Lam and Dina Lam, in the underlying action for false imprisonment and other counts arising from her employment as a domestic servant. She obtained a judgment against the Lams for compensatory and punitive damages, statutory penalties, attorney fees as costs, and other costs. In this action, State Farm sought a declaration of the parties' rights and duties with respect to two insurance policies that were issued to the Lams and later assigned to Mintarsih. The trial court determined that the policies provided coverage for $87,000 in compensatory damages and for the award of $161,591.05 in costs, but that State Farm had no obligation to pay the attorney fee award.

On appeal, Mintarsih contends State Farm is obligated to pay the attorney fee award against the Lams under policy provisions requiring it to pay costs awarded against the insureds, despite the fact that the right to a fee award arose solely from wage and hour claims for which there was no potential coverage under the policies. She also argues that she is entitled to postjudgment interest on the *entire* judgment. In its appeal, State Farm contends that it has no duty to indemnify the Lams for the compensatory damages award, based on Insurance Code section 533 and other grounds.

We conclude that State Farm's obligation under the policies' "supplemental payments" provisions, which promise to pay costs awarded against the insureds, extends *only* to costs arising from claims that were at least potentially covered under one or both of the policies. Mintarsih has not shown that the wage and hour claims that gave rise to the right to recover attorney fees were potentially covered under the policies and therefore has not established that State Farm is obligated to pay the attorney fees awarded as costs. In addition, Insurance Code section 533 precludes indemnity for the compensatory damages awarded against the Lams for false imprisonment and negligence. Because State Farm has no duty to indemnify the Lams under either policy for the damages awarded against them, we conclude that it has no obligation to pay postjudgment interest on the judgment awarded against them (other than interest on the cost award, which State Farm concedes). We therefore affirm the judgment in part and reverse in part with directions.

## *FACTUAL AND PROCEDURAL BACKGROUND*

### 1.  *Insurance Policies*

State Farm issued two insurance policies to the Lams, a homeowners policy and a personal liability umbrella policy. The homeowners policy included coverage for personal liability for "damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence." State Farm also agreed to defend any action seeking such damages. In addition, State Farm agreed to pay certain "claim expenses" over and above the limits of liability, including (1) "expenses we incur and costs taxed against an Insured in suits we defend"; (2) "prejudgment interest awarded against the Insured on that part of the judgment we pay; and [(3)] [¶] . . . interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies."[1]

The personal liability umbrella policy included coverage for the Lams' personal liability for "damages for a loss." The term "loss" was defined to include the commission of specified offenses resulting in personal injury, including false imprisonment. State Farm also agreed to defend such an action. The policy also stated: "When the claim or suit is covered by this policy, but not covered by any other policy available to you: [¶] . . . [¶] . . . we will pay the expenses we incur and costs taxed against you in suits we defend; . . . [¶] . . . we will pay prejudgment interest awarded against you on that part of the judgment we pay under Coverage L; and [¶] . . . we will pay the interest on the entire judgment which accrues after entry of the judgment

---

[1] Such provisions are commonly known as "supplemental payments" provisions.

and before we pay or tender, or deposit in court, that part of the judgment which does not exceed the limit of liability that applies." The policy stated further that the payment of such costs or interest was in addition to the limits of liability.

### 2. Underlying Action

Mintarsih filed a complaint against the Lams in July 2004 (*Mintarsih v. Lam* (Super. Ct. L.A. County, 2006, No. BC319275)). She alleged that she was falsely imprisoned in the Lams' home in Pasadena and forced to work as a domestic servant from June 1997 until approximately May 2004. She alleged that she previously had worked as a domestic servant for Dina Lam's relatives in Indonesia and Singapore before coming to the United States to work for the Lams. She alleged numerous counts against the Lams.

The Lams tendered their defense to State Farm under the homeowners and umbrella policies. State Farm agreed to defend the Lams, but reserved the right to assert defenses to coverage, to withdraw the defense if it determined that there was no duty to defend or indemnify the Lams, and to seek reimbursement of defense costs.

Mintarsih's complaint against the Lams was submitted to the jury on counts for false imprisonment, negligence, negligence per se, fraud, and wage and hour violations under the Labor Code. The jury found the Lams liable on each of those counts.[2] It awarded Mintarsih $75,000 in noneconomic damages and $12,000 in economic damages on the first four counts, and awarded her a total of $745,671 in damages on and a statutory penalty for the wage and hour violations. It also awarded her $2,500 in punitive damages against each defendant. Judgment was entered against the Lams on May 12, 2006.[3]

The court later granted Mintarsih's motion for attorney fees as costs as the prevailing party on the wage and hour claims, pursuant to Labor Code section 218.5. The court awarded her $733,323.60 in attorney fees and $161,591.05 in other costs.[4]

### 3. Present Action

State Farm filed a complaint for declaratory relief against the Lams and Mintarsih in June 2005, seeking a determination of the parties' rights and

---

[2] On the fraud count, the jury found Dina Lam liable but found that Dennis Lam was not liable.

[3] An amended judgment was later entered on July 7, 2006.

[4] State Farm contends the court should have awarded attorney fees under Labor Code section 1194, rather than under Labor Code section 218.5, citing *Earley v. Superior Court* (2000) 79 Cal.App.4th 1420 [95 Cal.Rptr.2d 57]. We need not decide which Labor Code section applies.

duties under the two policies and of its purported right to reimbursement of defense costs. The court conducted a nonjury trial in August 2006.

State Farm argued that the conduct for which the Lams were found liable was not an "accident" within the meaning of the policies. It also argued that the attorney fee award was based on wage and hour claims for which there was no coverage under the policies and that the policies did not provide for payment of attorney fees awarded as costs in these circumstances. State Farm did not pursue its claim for reimbursement of defense costs at trial.

The Lams and Mintarsih argued that State Farm had a duty to indemnify the Lams for all of the $87,000 in compensatory damages awarded for false imprisonment, negligence, negligence per se, and fraud, although they conceded that State Farm had no duty of indemnity with respect to the fraud count. They also argued that State Farm was obligated to pay the attorney fees awarded as costs regardless of whether the right to recover those fees arose from a claim for which there was no coverage under the policies. They conceded that State Farm had no duty to indemnify the Lams for the amounts awarded for wage and hour violations or for punitive damages.

The trial court issued a statement of decision in January 2007. It concluded that the policies provided coverage for $87,000 in compensatory damages awarded for false imprisonment and negligence, and that the policies also obligated State Farm to pay the $161,591.05 awarded against the Lams as costs. The court concluded, however, that State Farm had no obligation under the policies to pay the attorney fees awarded against the Lams based on wage and hour claims for which the policies provided no coverage, and that Insurance Code section 533 precluded indemnity for those fees. The court entered a judgment on April 3, 2007, stating that (1) State Farm had a duty to indemnify the Lams for damages in the amount of $87,000 and costs awarded against the Lams in the amount of $161,591.05, (2) State Farm otherwise had no duty to indemnify the Lams or pay Mintarsih any additional sum, and (3) State Farm was the prevailing party in this action.

Mintarsih moved to vacate the judgment and enter a different judgment ordering State Farm to pay postjudgment interest on the entire amount of the judgment in the underlying action. She also moved for a new trial. The court denied the new trial motion but granted in part the motion to vacate the judgment, and entered a new judgment. The new judgment, entered on August 15, 2007, stated that (1) State Farm had a duty to indemnify the Lams for damages in the amount of $87,000 and costs awarded against the Lams in the amount of $161,591.05, (2) State Farm was required to pay interest on only those two portions of the judgment in the underlying action, (3) State Farm had no duty to indemnify the Lams for any other amount, and (4) State Farm was the prevailing party in this action.

Mintarsih timely appealed the judgment, and State Farm also appealed.

## CONTENTIONS

Mintarsih contends in her appeal that (1) the supplemental payments provisions unambiguously require State Farm to pay costs awarded against the Lams in suits it defends, including attorney fees as costs, regardless of whether the right to recover attorney fees arises from claims that are covered under the policies; (2) Insurance Code section 533 does not preclude payment of the attorney fees awarded against the Lams because their conduct giving rise to the fee award was not willful within the meaning of the statute and because the obligation to pay costs arises from a defense, rather than an indemnity, obligation; and (3) the supplemental payments provisions require State Farm to pay "interest on the entire judgment," including those amounts that are not covered under the policies, until it pays the policy limit.

State Farm contends in its appeal that (1) the false imprisonment was willful within the meaning of Insurance Code section 533, so it has no duty of indemnity as to the damages awarded for false imprisonment; (2) the Lams' negligence was inseparable from the false imprisonment, so it has no duty of indemnity as to the damages awarded for negligence; (3) the negligence was not an "accident" within the meaning of the policies; (4) workers' compensation exclusions in the policies precluded coverage for the Lams' negligence; and (5) Mintarsih failed to prove what part of the $87,000 in compensatory damages awarded against the Lams was attributable to the counts for which the court concluded there was coverage, as required.[5]

## DISCUSSION

### 1. Rules of Policy Interpretation

■ "We interpret an insurance policy using the same rules of interpretation applicable to other contracts. (*Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115 [90 Cal.Rptr.2d 647, 988 P.2d 568].) The mutual intention of the contracting parties at the time the contract was formed governs interpretation. (Civ. Code, § 1636; *Palmer, supra*, at p. 1115.) We ascertain that intention solely from the written contract if possible, but also consider the circumstances under which the contract was made and the matter to which it relates. (Civ. Code, §§ 1639, 1647.) We consider the contract as a whole and interpret its language in context, rather than interpret a provision in isolation. (*Id.*, § 1641.) We interpret words in accordance with their

---

[5] State Farm does not challenge the finding that it is liable for $161,591.05 in costs awarded against the Lams in the underlying action plus interest on that amount.

ordinary and popular sense, unless the words are used in a technical sense or a special meaning is given to them by usage. (*Id.*, § 1644.) If contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs. (*Id.*, § 1638.)" (*GGIS Ins. Services, Inc. v. Superior Court* (2008) 168 Cal.App.4th 1493, 1506 [86 Cal.Rptr.3d 515].)

■ Policy language is ambiguous if it is susceptible of more than one reasonable interpretation in the context of the policy as a whole. (*MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 648 [3 Cal.Rptr.3d 228, 73 P.3d 1205].) Whether policy language is ambiguous is a question of law that we review de novo. (*Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903, 912 [226 Cal.Rptr. 558, 718 P.2d 920]; *American Alternative Ins. Corp. v. Superior Court* (2006) 135 Cal.App.4th 1239, 1245 [37 Cal.Rptr.3d 918].) Any ambiguity must be resolved in a manner consistent with the objectively reasonable expectations of the insured in light of the nature and kind of risks covered by the policy. (*Foster-Gardner, Inc. v. National Union Fire Ins. Co.* (1998) 18 Cal.4th 857, 869 [77 Cal.Rptr.2d 107, 959 P.2d 265].) The interpretation of a contract, including the resolution of any ambiguity, is solely a judicial function, unless the interpretation turns on the credibility of extrinsic evidence. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].)

### 2. Duty to Defend

■ Liability policies typically promise that the insurer will defend the insured in an action seeking damages for a covered claim. Thus, an insurer's duty to defend claims for which there is at least potential coverage under the policy is contractual. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 47 [65 Cal.Rptr.2d 366, 939 P.2d 766] (*Buss*).) The contractual duty to defend extends to all claims at least potentially covered under the policy, but no further. An insurer has no contractual duty to defend claims for which there is no potential coverage, but a duty to defend such claims is *implied in law* if there is at least potential coverage for, and therefore a duty to defend, another claim in the action. (*Id.* at pp. 48–49.) In such a "mixed" action, an insurer has a duty to defend the action in its entirety to ensure that the defense of claims that are at least potentially covered will be both meaningful and immediate. (*Id.* at p. 49.)

In such a circumstance, an insurer may provide the required defense under a reservation of its rights to later assert its objections to coverage as to one or more of the claims alleged against its insured. (*Blue Ridge Ins. Co. v. Jacobsen* (2001) 25 Cal.4th 489, 497–498 [106 Cal.Rptr.2d 535, 22 P.3d 313].) It may also reserve its right to seek reimbursement from the insured of any defense costs that can be attributed solely to claims that were not potentially covered

under the policy. (*Buss, supra,* 16 Cal.4th at pp. 50–53.) An insurer, however, may not seek reimbursement from an insured of defense costs attributable to claims that were at least potentially covered, because the duty to defend such claims was part of the insurance policy bargain. (*Id.* at pp. 49–50.) An insurer has no *contractual* duty to defend claims for which there is no potential for coverage, and defense costs that are solely attributable to such claims are not part of the bargained-for exchange. (*Id.* at p. 51.) An insurer's right to reimbursement of those defense costs is *implied in law* to avoid unjust enrichment. (*Ibid.*) An insured could have no objectively reasonable expectation to retain the windfall of payment for the defense of claims for which there was no potential coverage. (*Id.* at pp. 51, 59.)

### 3. *State Farm Has No Obligation to Pay Costs Arising Solely from Claims That Were Not Even Potentially Covered*

■ State Farm agreed to pay "expenses we incur and costs taxed against an Insured in suits we defend," under the terms of the homeowners policy. Under the terms of the umbrella policy, State Farm agreed to pay "the expenses we incur and costs taxed against you in suits we defend," provided that the claim or suit was not covered by any other policy. These provisions make the insurer's obligation to pay an award of costs against the insured dependent on the defense duty. Courts have interpreted the word "costs" as used in such a provision consistent with its use in Code of Civil Procedure section 1033.5, subdivision (a)(10), which provides that attorney fees authorized by contract, statute, or law are allowable as costs to the prevailing party under Code of Civil Procedure section 1032. (*Prichard v. Liberty Mutual Ins. Co.* (2000) 84 Cal.App.4th 890, 912 [101 Cal.Rptr.2d 298] (*Prichard*); *Insurance Co. of North America v. National American Ins. Co.* (1995) 37 Cal.App.4th 195, 206–207 [43 Cal.Rptr.2d 518].)

We interpreted similar language in *Golden Eagle Ins. Corp. v. Cen-Fed, Ltd.* (2007) 148 Cal.App.4th 976 [56 Cal.Rptr.3d 279] (*Golden Eagle*), in which the insurer agreed to pay " 'with respect to . . . any "suit" against an insured we defend,' '[a]ll costs taxed against the insured in the "suit." ' " (*Id.* at p. 992.) *Golden Eagle* involved an action for declaratory relief regarding duties to indemnify and defend the insured in an underlying action for breach of a commercial lease. (*Id.* at p. 982.) The judgment against the insured lessor included attorney fees awarded as costs based on an attorney fee clause in the lease. (*Id.* at p. 983.) The insurer provided a defense, but the trial court later determined that, as a matter of law, no duty to defend had ever arisen. (*Id.* at p. 983.)[6]

---

[6] A duty to defend arises only if there is at least a potential for coverage, as we have stated. (*Buss, supra,* 16 Cal.4th at pp. 47–48.) A "potential for coverage" refers to the possibility that facts alleged in the complaint or otherwise known to the insurer establish a basis for indemnity

We rejected a literal interpretation of " 'any "suit" against an insured we defend,' " and concluded that the obligation to pay a costs award could arise only if the insurer had a duty to defend the insurer. (*Golden Eagle, supra*, 148 Cal.App.4th at pp. 992, 996.) We stated that just as an insured could not reasonably expect an insurer to pay defense costs for a suit in which there was no potential for coverage, an insured could not reasonably expect an insurer to pay costs awarded against the insured in such a suit. (*Id.* at p. 994.) We also stated that requiring an insurer to pay costs awarded against an insured only if the insurer defended the action would discourage insurers from providing a defense in cases where coverage was in doubt, contrary to the principle that the law should encourage insurers to provide a defense in such cases. (*Id.* at pp. 995–996.) Accordingly, we held that because no duty to defend ever arose, the insurer had no obligation to pay costs awarded against the insured, including attorney fees awarded as costs.[7] (148 Cal.App.4th at p. 996.)

Thus, under a supplemental payments provision similar to those in this case, an insurer is obligated to pay costs awarded against an insured only if the insurer had a duty to defend the insured, regardless of whether the insurer actually provided a defense. (*Golden Eagle, supra*, 148 Cal.App.4th at p. 996.) We believe that this is what the parties intended in referring to "suits we defend" because they anticipated that the insurer would defend a lawsuit if and only if it had a contractual duty to defend. In other words, the language "suits we defend" should be interpreted by reference to the defense duty set

under the policy. (*Scottsdale Ins. Co. v. MV Transportation* (2005) 36 Cal.4th 643, 654–655 [31 Cal.Rptr.3d 147, 115 P.3d 460].) If there is a dispute as to the existence of such facts, a potential for coverage exists until the factual dispute is resolved so as to establish either actual coverage or the absence of coverage. (*Id.* at pp. 655, 657; *Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1085 [17 Cal.Rptr.2d 210, 846 P.2d 792].) Thus, any factual dispute affecting the existence of coverage creates a potential for coverage and a duty to defend. There is no "potential for coverage" and no duty to defend, however, if the existence of coverage depends solely on the resolution of a legal question (e.g., the interpretation or application of policy terms). (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 25–26 [44 Cal.Rptr.2d 370, 900 P.2d 619]; *McLaughlin v. National Union Fire Ins. Co.* (1994) 23 Cal.App.4th 1132, 1151 [29 Cal.Rptr.2d 559].) In those circumstances, coverage either exists or does not exist. (*Mirpad, LLC v. California Ins. Guarantee Assn.* (2005) 132 Cal.App.4th 1058, 1068 [34 Cal.Rptr.3d 136].) A duty to defend arises if coverage exists under the law, and no duty to defend arises if coverage does not exist. (*Ibid.*) If the legal question is decided in favor of coverage, a duty to defend existed as of the time that the insurer first became aware of facts alleged in the complaint, or extrinsic facts, establishing a basis for coverage. The resolution of a legal question against coverage, on the other hand, establishes in hindsight that no duty to defend ever existed and that there was never any potential for coverage. (*Scottsdale Ins. Co., supra*, 36 Cal.4th at pp. 657–658.)

[7] Our statement in *Golden Eagle, supra*, 148 Cal.App.4th at page 996, that the supplemental payments obligation "is an integral part of the Golden Eagle defense burden" should be construed to mean only that absent a duty to defend, the insurer had no obligation to pay costs awarded against the insured.

forth in the policy.[8] Accordingly, we conclude that the *contractual* obligation to pay costs awarded against an insured arises only if there is a contractual duty to defend. The contractual duty to defend extends only to those claims for which there is at least potential coverage under the policy, as we have stated. An insurer has no contractual duty to defend the insured as to claims that are not even potentially covered. (*Buss, supra*, 16 Cal.4th at p. 51.)

■ An insurer's implied-in-law duty to defend an entire "mixed" action, including claims that are not even potentially covered, does not give rise to an obligation under a supplemental payments provision to pay costs awarded against the insured that can be attributed solely to claims that were not potentially covered. This is because the duty to defend claims in a "mixed" action that are not potentially covered is not a contractual duty, and the reference in the supplemental payments provision to "suits we defend" encompasses only those claims that the insurer agreed to defend under the terms of the policy. Just as an insured could not reasonably expect to retain the benefit of an insurer's payment of defense costs that can be allocated solely to claims that were not even potentially covered (*Buss, supra*, 16 Cal.4th at pp. 51, 53), an insured could not reasonably expect an insurer to pay costs that can be allocated solely to claims that were not even potentially covered. Attorney fees awarded as costs against the insured can be allocated solely to claims that were not even potentially covered if (1) the fees were incurred *solely* to defend against claims that were not even potentially covered or (2) the right to recover fees arose *solely* from claims that were not even potentially covered.

*Prichard, supra*, 84 Cal.App.4th 890, involved an action by an insured against an insurer seeking, among other things, payment of attorney fees that were awarded as costs against the insured in the underlying action. (*Id.* at p. 900.) The fee award was based on contractual attorney fee clauses. (*Id.* at p. 911.) The insurer provided a defense in the underlying action for defamation and other counts, and did not challenge the existence of a duty to defend. (*Id.* at pp. 897, 901.) *Prichard* held that a supplemental payments provision obligated the insurer to pay the fee award, and rejected the insurer's argument that the provision "would not 'apply' to a defended mixed action where there is no actual coverage." (*Id.* at p. 912.) *Prichard* stated that the obligation to pay a cost award under the supplemental payments provision was "a function of the insurer's defense obligation, not its indemnity obligation." (*Id.* at pp. 911–912.) *Prichard* stated further that because the obligation to pay costs was a function of the defense obligation, the insurer was liable for attorney fees awarded as costs despite "the absence of even the possibility of coverage for the causes of action that generated the large cost award." (*Id.* at p. 912, fn. 22.) In so stating, *Prichard* did not distinguish the insurer's *contractual*

---

[8] We interpret policy language in the context of the policy as a whole. (Civ. Code, § 1641.)

duty to defend from its duty *implied in law* to defend the entire mixed action. To the extent that the above quoted statement may be read to support an insurer's liability for costs arising solely from claims that were not even potentially covered, we decline to follow *Prichard.*

Mintarsih concedes that the policies provided no coverage for her wage and hour claims against the Lams and does not contend there was any potential coverage for those claims. Her statutory right to recover attorney fees was based solely on the Labor Code violations. Absent a showing of a potential for coverage of those claims, we conclude that Mintarsih has established no basis to hold State Farm liable for her attorney fees awarded as costs against the Lams. In light of that conclusion, we need not decide whether Insurance Code section 533 applies to the attorney fee award in these circumstances. (Compare *Combs v. State Farm Fire & Casualty Co.* (2006) 143 Cal.App.4th 1338, 1344–1346 [49 Cal.Rptr.3d 917] with *Golden Eagle, supra,* 148 Cal.App.4th at p. 996 & fn. 17; see also fn. 7, *ante.*)

### 4. *Insurance Code Section 533 Precludes Indemnity for the Damages Awarded to Mintarsih for False Imprisonment and Negligence*

Insurance Code section 533 provides that an insurer has no duty to indemnify a loss caused by the insured's willful act.[9] An act is willful within the meaning of section 533 if the insured intended to commit the act and either intended the act to cause harm or the act was inherently harmful. (*Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 500–501 [78 Cal.Rptr.2d 142].) We held in *Downey Venture* that section 533 precluded indemnification for damages for malicious prosecution despite the fact that the policy expressly provided indemnity coverage for that tort, but section 533 did not relieve the insurer of the contractual duty to defend that claim. (*Downey Venture, supra,* at pp. 506, 509.)

The court instructed the jury in the underlying action that the Lams were liable for false imprisonment only if they "intentionally deprived plaintiff of her freedom of movement" without her voluntary consent. The jury found the Lams liable for false imprisonment. It found that Mintarsih worked for the Lams seven days a week for 14 hours per day, and awarded her $286,294 in unpaid wages, $185,744 in liquidated damages, compensation for rest breaks and meal breaks, and other amounts. The jury verdict established that the Lams' misconduct was intentional. The deprivation of Mintarsih's freedom for the purpose of exploiting her as a domestic servant, while depriving her of the wages and breaks to which she was entitled, was inherently harmful.

---

[9] Insurance Code section 533 states: "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others."

Accordingly, we conclude that the Lams' misconduct was willful within the meaning of Insurance Code section 533. Section 533 precludes indemnity for the damages awarded for false imprisonment, despite the fact that the umbrella policy expressly promised indemnity for false imprisonment.

The jury also found the Lams liable for negligence. Mintarsih testified in the underlying action that she suffered a pain in her toe and complained to the Lams for several months, but they delayed sending her to a doctor. When she eventually obtained medical care, the doctor had to remove her toenail. She also testified that she complained to the Lams many times about a toothache, but they delayed sending her to a dentist. When she eventually obtained dental care, the dentist had to remove a tooth. The court instructed the jury that the Lams were liable for negligence if they failed to use reasonable care to prevent harm to another.

■ Insurance Code section 533 precludes indemnity for a loss caused by conduct that, standing alone, could be characterized as negligent rather than intentional, but that is so closely related to intentional misconduct as to be inseparable from it. (*Horace Mann Ins. Co. v. Barbara B., supra*, 4 Cal.4th at pp. 1084, 1085; *State Farm Fire & Casualty Co. v. Century Indemnity Co.* (1997) 59 Cal.App.4th 648, 662–663 [69 Cal.Rptr.2d 403].) *Horace Mann* involved a junior high school student who sued her teacher for sexual molestation and other harassing conduct. (*Horace Mann, supra*, at p. 1079.) The insurer filed a declaratory relief action, alleging that there was no potential coverage under the teacher's policy because section 533 precluded liability for the insured's intentional misconduct. (*Horace Mann*, at p. 1080.) The trial court granted summary judgment in favor of the insurer. (*Ibid.*) The California Supreme Court reversed. (*Id.* at p. 1087.) *Horace Mann* stated that a molester could be liable to his victim for negligence if the negligent conduct was "apart from, and not integral to, the molestation." (*Id.* at p. 1083.) *Horace Mann* stated that the limited evidence in the record failed to show that the alleged negligent acts "occurred in such close temporal and spatial proximity to the molestation as to compel the conclusion that they are inseparable from it." (*Id.* at p. 1084, italics omitted.) While acknowledging that "[i]n many cases the plaintiff's allegations of molestation and other misconduct may be inseparably intertwined . . . ," *Horace Mann* concluded that triable issues of fact as to whether the alleged negligent conduct was inseparable from the intentional molestation precluded summary judgment. (*Id.* at p. 1085.)

■ The evidence presented to the jury in this case shows that the Lams failed to provide timely medical and dental care to their domestic servant during the time that they intentionally deprived her of freedom of movement. Their negligent conduct was intimately connected with their intentional

misconduct, both temporally and spatially. Deprived of her freedom of movement, Mintarsih depended on the Lams to satisfy her health care needs. They failed to do so.

In our view, the Lams' negligence was so closely related to their intentional misconduct as to constitute the same course of conduct for purposes of Insurance Code section 533. The evidence compels the conclusion that the Lams' negligence in failing to provide timely health care was inseparable from their false imprisonment of Mintarsih. Section 533 therefore precludes indemnity for the Lams' negligence liability. In light of our conclusion that State Farm has no duty to indemnify the Lams for damages awarded in the underlying action, we need not address its other contentions.

### 5. *State Farm Has No Obligation to Pay Additional Postjudgment Interest*

In its homeowners policy, State Farm agreed to pay "interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies." Under the terms of its umbrella policy, State Farm promised to pay "the interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court, that part of the judgment which does not exceed the limit of liability that applies."

These provisions contemplate a covered claim and are necessarily tied to and depend upon State Farm's *indemnity* obligation. State Farm agreed to pay postjudgment interest accruing until it pays or tenders in court the amount payable under each policy, not to exceed "the limit of liability that applies." The limits of liability apply to the personal liability coverage under the policies, but do not apply to the supplemental payments obligation. Thus, these provisions tie the obligation to pay postjudgment interest on "the entire judgment" to the failure to pay indemnity for a covered claim rather than the failure to pay other amounts that may be due under the policies. By tying that obligation to the failure to pay indemnity for a covered claim, these provisions indicate that the obligation to pay postjudgment interest on "the entire judgment" does not arise if the policy provides no coverage for the damages awarded against the insured. In light of our conclusion that the policies provide no coverage for the damages awarded in the underlying action, we conclude that no obligation to pay postjudgment interest on "the entire judgment" ever arose. We therefore need not decide the precise meaning of "the entire judgment" in these circumstances.

## DISPOSITION

The judgment is reversed to the extent that it holds that State Farm is liable for $87,000 in damages awarded against the Lams plus prejudgment interest on that amount. The trial court is directed to enter a new judgment declaring that State Farm has no duty to indemnify the Lams for the $87,000 in damages nor any obligation to pay prejudgment interest on that amount. The judgment is otherwise affirmed. State Farm is entitled to recover its costs on appeal.

Klein, P. J., and Aldrich, J., concurred.