Filed 1/16/20; Certified for Publication 2/13/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, <br><br> Plaintiff, Cross-defendant and Respondent, <br><br> v. <br><br> KLA-TENCOR CORPORATION, <br><br> Defendant, Cross-complainant and Appellant. | H044890 <br> (Santa Clara County <br> Super. Ct. No. CV288053) |

Respondent Travelers Property Casualty Company of America (Travelers) prevailed on its motion for summary judgment in this duty-to-defend insurance dispute with its insured, appellant KLA-Tencor Corporation (KLA). The superior court concluded that the language of the commercial liability insurance policies Travelers had issued to KLA, which covered claims for "malicious prosecution," could not have created an objectively reasonable expectation that Travelers would defend a *Walker Process* claim[1] against KLA. The *Walker Process* claim that KLA tendered to Travelers alleged

---

[1] This type of claim derives its name from *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.* (1965) 382 U.S. 172, in which the United States Supreme Court recognized an antitrust cause of action under the Sherman Act and the Clayton Act for using a fraudulently procured patent to attempt to monopolize the market. (*Id*. at pp. 176-178.)

that KLA had fraudulently procured a patent from the Patent and Trademark Office (PTO) and used that patent to attempt to monopolize the market for a product. Travelers declined to defend KLA against that claim. KLA contends that it was objectively reasonable for it to expect the "malicious prosecution" coverage in its policies to extend to this *Walker Process* claim. We conclude otherwise and affirm the judgment.

## I. Background

KLA was the insured and Travelers was the insurer under a series of commercial liability policies issued to KLA covering the period from 2010 to 2015. One of the coverages under these policies was for "personal and advertising injury liability," which was defined as "'personal injury' or 'advertising injury.'"**[2]** The dispute in this case concerns only the "personal injury" coverage. "Personal injury" was defined as "injury, other than 'advertising injury', caused by one or more of the following offenses: [¶] (1) False arrest, detention or imprisonment; [¶] (2) *Malicious prosecution*; [¶] . . . [¶] (4) Oral or written publication, including publication by electronic means, of material . . . ." (Italics added.)

One of the exclusions from these policies was the "Intellectual Property" exclusion. It excluded: "'Personal injury' or 'advertising injury' arising out of any actual or alleged infringement or violation of any of the following rights or laws, or any other 'personal injury' or 'advertising injury' alleged in any claim or 'suit' that also alleges any such infringement or violation: . . . Patent . . . [¶] . . . [¶] . . . or [¶] . . . Other intellectual property rights or laws."

---

**[2]** The policy's definitions section defined "'Personal and advertising injury,'" but an endorsement "replace[d] the definition of 'personal and advertising injury' in the Definitions Section" with the definition provided in the endorsement. The same was true as to the intellectual property exclusion.

Xitronix and KLA manufacture competing products in the "active dopant metrology market," and the two companies have a history of legal disputes between them.[3] In 2008, Xitronix filed a federal action against KLA seeking to invalidate some of the claims in KLA's "'441 patent." KLA claimed in turn that Xitronix had infringed on KLA's '441 patent. Xitronix prevailed in the 2008 action. Several of KLA's patent claims in its '441 patent were invalidated for indefiniteness and obviousness, and KLA's infringement claim was rejected. In 2011, Xitronix brought a tort action against KLA in Texas state court related to KLA's disparagement of Xitronix's product. KLA prevailed on summary judgment, and that judgment was affirmed on appeal in 2014.

In 2014, Xitronix filed a federal antitrust action for damages against KLA in federal court in Texas[4] alleging a single *Walker Process* cause of action for "Attempted Monopolization" in violation of the Sherman Act and the Clayton Act. The 2014 Xitronix action was based on allegations that, from 2011 to 2014, KLA had "fraudulently prosecut[ed] through issuance certain patent claims" that KLA knew had been ruled to be invalid in the 2008 action and that KLA did so with the intent to "monopolize and destroy competition . . . ."

The 2014 action concerned KLA's "'260 patent," which KLA had obtained in 2014 after the invalidation of portions of KLA's '441 patent. Xitronix alleged that KLA had purposely sought to include in the '260 patent claims that had been invalidated in the litigation concerning the '441 patent. Xitronix alleged that KLA had engaged in "fraudulent conduct before the United States Patent and Trademark Office ('the PTO')" in KLA's "prosecution of the '260 patent" before the PTO. Xitronix alleged that KLA's "fraudulent prosecution" "and procurement" of the '260 patent had been "undertaken in

---

[3]   KLA argues on appeal that this litigation history was extrinsic evidence of the underlying basis for Xitronix's allegations in the 2014 action.

[4]   Xitronix is located in Texas; KLA is located in Santa Clara County.

bad faith" to monopolize the market and preclude Xitronix from competing with KLA. Xitronix contended that KLA's "entire prosecution of the '260 patent was without any objectively reasonable basis." It asserted that KLA's "continued prosecution of patent claims" created a "potential litigation threat" that deterred potential investors in Xitronix. Xitronix noted in its complaint that it previously had been "sidelined by KLA's false allegations of infringement during the 2008-2010 timeframe."

KLA asked Travelers to defend and indemnify KLA in the 2014 Xitronix action. Travelers declined on the ground that there was no potential for coverage. Travelers brought a declaratory relief action in Santa Clara County seeking to resolve whether it had a duty to defend and indemnify KLA in the 2014 Xitronix action under the commercial liability or CyberFirst policies it had issued to KLA.[5] KLA responded with a cross-complaint for breach of contract and declaratory relief. KLA alleged that it had been damaged by Travelers' refusal to defend KLA in the 2014 Xitronix action. It also sought declaratory relief concerning Travelers' duty to defend and indemnify KLA in the 2014 Xitronix action.

In June 2016, Travelers filed a motion for summary judgment. Travelers contended that the allegations in the 2014 Xitronix action were not covered by the commercial liability policies or were excluded under the intellectual property exclusion. It relied solely on the policy language. KLA opposed Travelers' motion, but it filed a cross-motion for "partial summary judgment" seeking adjudication of the declaratory relief causes of action in both Travelers' action and KLA's action. KLA too relied solely

---

[5]     Travelers also insured KLA under a CyberFirst policy. The CyberFirst policy excluded "Advertising Injury Or Personal Injury," "Malicious Wrongful Acts," and "Knowing Violations Of Rights Or Laws." The CyberFirst policy defined "personal injury" to include injury caused by "Malicious prosecution." The CyberFirst policy is not at issue in this appeal. KLA sought a defense and coverage under only the commercial liability policies.

on the policy language. It claimed that Xitronix's allegations in the 2014 action fell within the policy's coverage for "malicious prosecution" and did not come within the intellectual property exclusion. In KLA's view, the dispute between the parties "boil[ed] down to the proper interpretation of the ambiguous term 'malicious prosecution,'" in the policies. KLA asked the court to deny Travelers' motion and grant KLA's motion.

The superior court granted Travelers' motion and denied KLA's motion. It found: "No one could reasonably construe that complaint's allegations of a 'Walker Process' violation, fraudulent behavior in a nonjudicial proceeding before the Patent and Trademark Office, as a claim for 'malicious prosecution' under California law (or Texas law) covered by the policy as a 'personal injury.'" The court found that the 2014 Xitronix action did not fall within the coverage of the commercial liability policies, and it therefore did not address whether the intellectual property exclusion applied. The court entered judgment for Travelers. KLA timely filed a notice of appeal.

## II. Discussion

KLA contends that the coverage clause of the insurance contract between KLA and Travelers providing coverage for "malicious prosecution" was ambiguous and could be reasonably construed as potentially applying to the *Walker Process* allegations in the 2014 Xitronix action.

"When determining whether a particular policy provides a potential for coverage and a duty to defend, we are guided by the principle that interpretation of an insurance policy is a question of law. [Citation.] The rules governing policy interpretation require us to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 (*Waller*).)

"The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties.

5

'Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id.*, § 1639.) The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" (*id.*, § 1644), controls judicial interpretation. (*Id.*, § 1638.)' [Citations.] A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. [Citation.] But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract. [Citation.] Courts will not strain to create an ambiguity where none exists. [Citation.]" (*Waller*, *supra*, 11 Cal.4th at pp. 18-19.)

"'[A]mbiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage.'" (*Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115.) "Whether policy language is ambiguous is a question of law that we review de novo. [Citations.] Any ambiguity must be resolved in a manner consistent with the objectively reasonable expectations of the insured in light of the nature and kind of risks covered by the policy. [Citation.] The interpretation of a contract, including the resolution of any ambiguity, is solely a judicial function, unless the interpretation turns on the credibility of extrinsic evidence." (*State Farm General Ins. Co. v. Mintarsih* (2009) 175 Cal.App.4th 274, 283.) Coverage clauses in insurance contracts are construed broadly, and ambiguities are generally resolved in favor of coverage. (*Montrose Chemical Corp. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645, 667.)

"[T]he determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." (*Waller*, *supra*, 11 Cal.4th at

6

p. 19.) "If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage. On the other hand, if, as a matter of law, neither the complaint nor the known extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise in the first instance." (*Scottsdale Ins. Co. v. MV Transportation* (2005) 36 Cal.4th 643, 655.)

KLA's claim that "malicious prosecution" is ambiguous is primarily based on the Ninth Circuit Court of Appeal's decision in *Lunsford v. American Guar. & Liab. Ins. Co.* (9th Cir. 1994) 18 F.3d 653 (*Lunsford*).[6] In *Lunsford*, the insurance policy covered "'malicious prosecution,'" and the insured was sued for "abuse of process." (*Lunsford*, at p. 654.) The Ninth Circuit held that there was a duty to defend because there was a potential for coverage: "'Malicious prosecution' as used in the policy is ambiguous because it is not defined in the policy and because a layperson's understanding would differ from the legal definition of the term." (*Ibid.*) "A layperson could believe reasonably that the words 'malicious prosecution' only required a lawsuit or other legal proceeding to be brought maliciously or spitefully for an improper purpose. A layperson also could believe reasonably that a counterclaim for abuse of process satisfied that requirement. . . . [¶] Although the elements of the two torts technically are different, the distinction is not as clear as [the insurer] insists." (*Lunsford*, at p. 655.) "There is no reason, given the overlap between malicious prosecution and abuse of process (particularly in the eyes of those untrained in the law), why persons who purchase insurance covering the cost of defending against the one claim would not also expect the

---

[6]    KLA faults the superior court for focusing on "the technical *legal* definition of malicious prosecution under California law." Since we exercise de novo review, the superior court's reasoning is irrelevant.

contract to cover the cost of defending against the other. The term as used in the policy is ambiguous. Therefore, we resolve the issue in favor of coverage." (*Lunsford*, at p. 656.)

While it is true that the Ninth Circuit held in *Lunsford* that "malicious prosecution" was "ambiguous" in that case, "language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." (*Waller*, *supra*, 11 Cal.4th at pp. 18-19.) The mere fact that "malicious prosecution" was deemed ambiguous in *Lunsford* does not mean that it is ambiguous in this case. Our inquiry is whether it is objectively reasonable for an insured to understand "malicious prosecution" to include *Walker Process* claims. KLA argues that it is because an insured could believe that "malicious prosecution" includes conduct before the PTO. KLA argues: "Just as a layperson could reasonably understand the term 'malicious prosecution' to encompass abuse-of-process claims, a layperson could also reasonably understand 'malicious prosecution' to cover *Walker Process* claims. Malicious prosecution, abuse-of-process, and *Walker Process* claims all require affirmative abuse of legal processes and procedures with an ulterior motive or purpose. [Fn. omitted.] A layperson would therefore reasonably understand all three types of claims to fall under the Commercial Policies' coverage for 'malicious prosecution.' At a minimum, whether a lay person could reasonably understand the term 'malicious prosecution' to encompass *Walker Process* claims creates a doubt regarding whether Travelers has a duty to defend."

Coverage language is "considered ambiguous when it is capable of two or more constructions, both of which are reasonable" (*Waller*, *supra*, 11 Cal.4th at pp. 18-19), but an insured's proposed construction must be "consistent with the *objectively reasonable* expectations of the insured in light of the nature and kind of risks covered by the policy." (*State Farm General Ins. Co. v. Mintarsih*, *supra*, 175 Cal.App.4th 274, 283, italics added.) Here, KLA argues that *Walker Process* claims are so similar to malicious prosecution and abuse of process claims that it would be objectively reasonable for an insured to expect "malicious prosecution" coverage to extend to *Walker Process* claims.

8

We disagree. Unlike a malicious prosecution claim or an abuse of process claim, both of which are commonly understood to be premised on actions in *legal proceedings*, a *Walker Process* claim does not necessarily involve any legal proceedings. A *Walker Process* claim arises from fraud on the PTO, not any court, and the use of a fraudulently procured patent to attempt to monopolize the market. Neither the fraud element nor the use element *necessarily* involves any legal proceedings. Since "malicious prosecution" is commonly understood to refer to legal proceedings, an objectively reasonable insured could not expect "malicious prosecution" coverage to extend to claims that, unlike malicious prosecution and abuse of process claims, do not necessarily involve any legal proceedings.

KLA's reliance on *CNA Casualty of California v. Seaboard Surety Co.* (1986) 176 Cal.App.3d 598 (*CNA*) is misplaced. In *CNA*, the specific allegations in the complaint were "arguably within" the policy's coverage language despite the fact that the cause of action was labelled "antitrust." (*CNA*, at pp. 607-609.) Unlike Xitronix's allegations here, the allegations in *CNA* that potentially fell within the policy's malicious prosecution coverage were based on "'counterclaims'" *in a court action*. (*CNA*, at p. 608.)

KLA argues that it is irrelevant whether "malicious prosecution" coverage would extend to "a generic *Walker Process* claim." In its view, the coverage question turns on "the 'enforcement' element of [a *Walker Process*] claim and the 'unique' facts supporting that [enforcement] element here." (Fn. omitted.) KLA claims that Xitronix's *Walker Process* claim "meets the legal elements of malicious prosecution and/or abuse of process." KLA reasons that the fact that a *Walker Process* claim requires "enforcement" of the fraudulently obtained patent means that a court action or something akin thereto is necessarily required, thus making the claim essentially one for malicious prosecution or abuse of process. To support this claim, KLA essentially imports into Xitronix's 2014 action the claims that Xitronix made in its 2011 Texas state court action. KLA argues that "the 'enforcement' element of the underlying [2014 Xitronix *Walker Process*] claim

9

is based on allegations that KLA maliciously prosecuted *a prior patent-infringement claim* against Xitronix for purposes of quashing competition. A layperson would reasonably understand these facts to fall within the scope of the 'malicious prosecution' offenses covered by the Policies." (Italics added.) KLA claims that Xitronix's 2014 complaint was based on allegations that KLA "competitively harmed Xitronix by enforcing that patent, *including in court through prior litigation . . . .*" (Italics added.)

These contentions lack merit. First, our *construction* of the coverage language based on the insured's objectively reasonable expectations is *not* properly premised on the allegations in the specific complaint at issue. Coverage language is construed as of the time of issuance of the policy, so construction of that language cannot depend on the precise allegations made in Xitronix's subsequent complaint. It is only after the coverage language has been properly construed that we proceed to the next step and examine the complaint to determine whether there was a potential for coverage that triggered the duty to defend. Second, KLA's argument that Xitronix's 2014 action was based on KLA's *prior infringement claim* against Xitronix is simply inaccurate. Xitronix's complaint plainly did not allege that KLA had enforced *the '260 patent*, which was the one that Xitronix alleged had been obtained through fraud on the PTO, through the prior litigation between KLA and Xitronix because it was undisputed that the '260 patent was not issued until 2014, *after* the resolution of that litigation. Furthermore, that prior litigation concerned the '441 patent, not the '260 patent, and Xitronix did not contend in its 2014 action that the '441 patent had been procured through fraud on the PTO. Consequently, the '441 patent could not have been the basis for Xitronix's 2014 *Walker Process* claim.

Although KLA argues that there was a potential for coverage due to the prior litigation, that argument ignores the actual basis for Xitronix's 2014 action. The mere fact of prior litigation between two parties does not mean that all subsequent actions necessarily or even potentially will come within coverage for "malicious prosecution." That determination depends on the nature of the allegations in the action. Here,

Xitronix's 2014 action was necessarily limited to KLA's procurement and use of the '260 patent, which KLA obtained in 2014. The history of prior litigation did not change the basis for this claim into one for malicious prosecution because there were no allegations of any legal proceedings involving the '260 patent.

Xitronix's 2014 action alleged that KLA had enforced the '260 patent through the *implied threat* of litigation. Xitronix alleged that KLA had used the '260 patent to create "a potential liability to suit" for any Xitronix customers. Such an allegation does not have the potential to fall within the policy's "malicious prosecution" coverage because it is not premised on any actual legal proceedings. Under these circumstances, there was no potential for coverage under the "malicious prosecution" coverage in the policy. Hence, the superior court correctly ruled that Travelers had met its burden of demonstrating that it had no duty to defend KLA in the 2014 Xitronix action.

### III. Disposition

The judgment is affirmed.

_____
Mihara, J.

WE CONCUR:


_____
Elia, Acting P. J.


_____
Bamattre-Manoukian, J.


Travelers v. KLA-Tencor
H044890

12

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,<br><br>    Plaintiff, Cross-defendant and<br>    Respondent,<br><br>    v.<br><br>KLA-TENCOR CORPORATION,<br><br>    Defendant, Cross-complainant and<br>    Appellant. | H044890<br>(Santa Clara County<br> Super. Ct. No. CV288053)<br><br>ORDER GRANTING REQUEST<br>FOR PUBLICATION |

BY THE COURT:

Pursuant to California Rules of Court, rule 8.1105(b), the request for publication is hereby granted. It is ordered that the opinion in this matter, filed on January 16, 2020, shall be certified for publication.


Date:                        _____

                                    Mihara, J.


                       _____

                                    Elia, Acting P. J.


                       _____

                                    Bamattre-Manoukian, J.

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court |
| Trial Judge: | Honorable James L. Stoelker |
| Attorneys for Plaintiff, Cross-defendant, and Respondent: | Bruce D. Celebrezze<br>Dean Joseph McElroy<br>Douglas Joseph Collodel<br>Clyde & Co US LLP |
| Attorneys for Defendant, Cross-complainant, and Appellant: | Jack C. Praetzellis<br>Dwight Craig Donovan<br>Jeffrey Bouslog<br>Fox Rothschild LLP |

Travelers v. KLA-Tencor
H044890