[No. S074326. Dec. 6, 1999.]

GEOFFREY H. PALMER et al., Plaintiffs and Appellants, v.
TRUCK INSURANCE EXCHANGE et al., Defendants and Respondents.

1110

**COUNSEL**

The Ford Law Firm, William H. Ford III, Claudia J. Serviss, George H. Kim and Paul C. Cook for Plaintiffs and Appellants.

Brown & Bain, Jack E. Brown, Joseph E. Mais, Craig W. Soland, David P. Brooks and Dan L. Bagatell for Apple Computer, Inc., as Amicus Curiae on behalf of Plaintiffs and Appellants.

Gauntlett & Associates, David A. Gauntlett and M. Danton Richardson for Mez Industries, Inc., as Amicus Curiae on behalf of Plaintiffs and Appellants.

Heller Ehrman White & McAuliffe, David B. Goodwin and Esta L. Brand for Pacific Gas and Electric Company as Amicus Curiae on behalf of Plaintiffs and Appellants.

Horvitz & Levy, Peter Abrahams, Mitchell C. Tilner, Holly R. Paul; Tharpe & Howell, Robert J. Needham, P. Mark Kirwin and Heather A. Sciacca for Defendant and Respondent Truck Insurance Exchange.

Peterson & Ross, Vivian R. Bloomberg and Gina M. Brown for Defendants and Respondents American Casualty Company of Reading, Penn., and Continental Casualty Company.

Preuss Walker & Shanagher, Denis F. Shanagher, Alan J. Lazarus and Edward P. Joy for Westchester Fire Insurance Company and

Westchester Surplus Lines Insurance Company as Amici Curiae on behalf of Defendants and Respondents.

Morison-Knox Holden Melendez & Prough, William C. Morison-Knox and Thomas Holden for the Travelers Indemnity Company as Amicus Curiae on behalf of Defendants and Respondents.

Pratt & Associates, Gibson E. Pratt and Charles L. Currier for Federal Insurance Company as Amicus Curiae on behalf of Defendants and Respondents.

Hancock Rothert & Bunshoft, Paul J. Killion and Kate Cutler for London Market Insurers as Amicus Curiae on behalf of Defendants and Respondents.

Barger & Wolen, Mark C. Goodman, Larry D. Jackson, Richard T. Gieryn, Jr., Steven C. Roycraft; Lopez, Hodes, Restaino, Milman & Skikos, Richard de Saint Phalle and Mark C. Crawford for Industrial Indemnity Company, Industrial Insurance Company of Hawaii, Ltd., and Industrial Indemnity Company of the Northwest as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**BROWN, J.**—In this case we consider whether certain insurance policy provisions relating to advertising liability caused by "title" or "slogan" infringement cover infringement of *any* name. Interpreting the relevant policy language in the context of the policy as a whole, we hold that these provisions only cover infringement of names of literary or artistic works or names that are slogans—and no other names.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Newhall Land and Farming Company (Newhall), a California limited partnership, develops real property in Santa Clarita Valley and owns the registered mark for "Valencia." Easton Investments II (Easton), a California limited partnership, developed a residential project in Santa Clarita known as "Valencia Village Apartments" and/or "The Valencia Village at Newhall." Westcreek Properties, Ltd. (Westcreek), a California limited partnership, developed a residential project in Santa Clarita known as "Valencia Vista Condominiums" and "Valencia Terrace Apartments." Geoffrey H. Palmer was a general partner of both Easton and Westcreek.

Newhall filed a complaint in federal district court against Palmer, Easton, Westcreek (collectively the Palmer defendants) and others alleging: (1)

infringement of the registered mark "Valencia"; (2) false designation of origin and false representation; and (3) unfair competition (the Newhall action). In addition to alleging that the Palmer defendants used the Valencia mark, the complaint alleged that they "utilized colored flags, signs and slogans which are remarkably similar to those utilized by [Newhall] for its real estate projects."[1]

After a trial, a jury found for Newhall and awarded it $937,678 in damages for Easton's infringement and $1,360,392 in damages for Westcreek's infringement. According to the special verdict forms, the jury found that the Palmer defendants' use of the Valencia mark was "likely to cause confusion," "infringing" and "a false representation or a false designation of origin." The jury also found that their "conduct was willful."

Based on these findings, the district court entered judgment against the Palmer defendants on count 1 for trademark infringement and count 2 for false designation of origin and false representation (the Newhall judgment).[2] Citing "extenuating circumstances" and the absence of "exceptional" circumstances, the court then denied Newhall's request for enhanced damages and attorney fees pursuant to title 15, United States Code section 1117, despite the jury's finding of willful conduct.

Soon after the jury verdict, the Palmer defendants tendered the Newhall action to various insurance carriers, including Truck Insurance Exchange (Truck). Truck agreed to pay a portion of the fees and costs on appeal but reserved the right to contest coverage. During the pendency of the appeal, the Palmer defendants settled with Newhall for $1,590,000. Truck, however, denied coverage and refused to contribute to the settlement.

The Palmer defendants then filed the instant action against Truck and other insurers who are not part of this appeal, alleging multiple causes of action for declaratory relief and breach of the implied covenant of good faith and fair dealing. Although the complaint asserted coverage pursuant to multiple insurance policies, the only policy at issue in this appeal is the comprehensive umbrella liability policy (Umbrella Policy or Policy) issued by Truck to Palmer, doing business as Easton Investments. The Umbrella

---

[1] We take judicial notice of various pleadings and documents contained in the record of the Newhall action. (See Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

[2] The parties stipulated to the dismissal of the third count for unfair competition upon the entry of a permanent injunction by the district court.

Policy provided coverage for "[a]dvertising [l]iability" which included "[i]nfringement of copyright or of title or of slogan"[3] but excluded coverage "with respect to advertising activities" for "infringement of registered trade mark, service mark or trade name . . . ." The exclusion, however, did "not relate to titles or slogans."

After giving the Palmer defendants two opportunities to amend their complaint, the trial court sustained Truck's demurrer without leave to amend on the grounds that the Palmer defendants lacked standing and breached the "no action" clauses of their policies. The court later entered a judgment of dismissal as to Truck.

The Court of Appeal affirmed the dismissal of most claims but reversed the dismissal of all claims relating to Truck's Umbrella Policy. In doing so, the court rejected both grounds for dismissal cited by the trial court.[4] The court further held that: (1) the Newhall judgment fell within the scope of the policy language requiring coverage for infringement "of title or of slogan" despite the language excluding coverage for trademark infringement; and (2) Insurance Code section 533—which bars indemnity for "wilful" acts—did not bar indemnity for the Newhall judgment despite the jury's finding of willful conduct.

We originally granted review to determine whether: (1) policy language providing coverage for advertising liability caused by infringement "of title or of slogan," but excluding coverage for infringement of "trade mark, service mark or trade name [except relating to] titles or slogans," covers infringement of any name; and (2) Insurance Code section 533 bars indemnity for willful trademark infringement. After reviewing the relevant policy language in context, we find that this language only provides coverage for infringement of a name of a literary or artistic work or a name that is also a slogan. Because our interpretation of the policy language disposes of the entire appeal, we do not reach the second issue.

## II. Discussion

Because Truck timely agreed to defend the Newhall action, the parties agree Truck has no duty to reimburse the Palmer defendants for the settlement if the Umbrella Policy does not cover the underlying district court

---

[3]The policy states: "Advertising Liability means: (1) Libel, slander or defamation; (2) Infringement of copyright or of title or of slogan; (3) Piracy or unfair competition or idea misappropriation under an implied contract; (4) Invasion of right of privacy; committed or alleged to have been committed in any advertisement, publicity article, broadcast or telecast and arising out of the named insured's advertising activities."

[4]The parties do not contest this part of the Court of Appeal's opinion or the part of its opinion affirming the trial court's rulings.

judgment. (See *Isaacson* v. *California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 793 [244 Cal.Rptr. 655, 750 P.2d 297] [to obtain reimbursement, "the insured must demonstrate that the claim was covered under the policy in question, or that the insurer breached its duty to defend"].) Thus, the dispositive issue is whether the policy language relating to advertising liability actually covers a judgment based on infringement of a name like "Valencia." We conclude it does not.

■ "[I]nterpretation of an insurance policy is a question of law." (*Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619] (*Waller*).) "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." (*Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545] (*Bank of the West*).) Thus, "the mutual intention of the parties at the time the contract is formed governs interpretation." (*AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 821 [274 Cal.Rptr. 820, 799 P.2d 1253] (*AIU Ins.*).) If possible, we infer this intent solely from the written provisions of the insurance policy. (See *id.* at p. 822.) If the policy language "is clear and explicit, it governs." (*Bank of the West, supra,* 2 Cal.4th at p. 1264.)

When interpreting a policy provision, we must give its terms their " 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage.' " (*AIU Ins., supra,* 51 Cal.3d at p. 822, quoting Civ. Code, § 1644.) We must also interpret these terms "in context" (*Bank of the West, supra,* 2 Cal.4th at p. 1265), and give effect "to every part" of the policy with "each clause helping to interpret the other." (Civ. Code, § 1641; see also *Holz Rubber Co., Inc.* v. *American Star Ins. Co.* (1975) 14 Cal.3d 45, 56 [120 Cal.Rptr. 415, 533 P.2d 1055, 79 A.L.R.3d 518].)

■ A policy provision is ambiguous *only* if it is susceptible to two or more reasonable constructions despite the plain meaning of its terms within the context of the policy as a whole. (See *Foster-Gardner, Inc.* v. *National Union Fire Ins. Co.* (1998) 18 Cal.4th 857, 868 [77 Cal.Rptr.2d 107, 959 P.2d 265] (*Foster-Gardner*).) The court may then "invoke the principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage." (*La Jolla Beach & Tennis Club, Inc.* v. *Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 37 [36 Cal.Rptr.2d 100, 884 P.2d 1048].)

■ We begin our analysis by examining the policy's coverage clauses. (See *Waller, supra,* 11 Cal.4th at p. 16.) If a claim does not fall within the

terms of these clauses, then no coverage exists. (*Ibid.*) In this case, the only applicable clause provides coverage for "advertising liability" resulting from infringement "of title or of slogan" (coverage clause). Construing this language in light of the rules governing contractual interpretation reveals that the coverage clause—when read in conjunction with the clause excluding coverage for trademark infringement (trademark exclusion clause)—does not cover the Newhall judgment because the mark "Valencia" is neither the name of a literary or artistic work nor a slogan.

## A. *Infringement of Title*

The word "title" has multiple meanings. Not surprisingly, each party backs the meaning of "title" most favorable to its position. Truck contends "title" should mean "[a]n identifying name given to a book, play, film, musical composition, or other work." (American Heritage College Dict. (3d ed. 1993) p. 1421.)[5] On the other hand, the Palmer defendants contend "title" should be broadly defined as "a descriptive name [or] epithet." (American Heritage College Dict., *supra*, at p. 1421.)[6] Amicus curiae Mez Industries, Inc. (Mez) proposes an even broader definition: "title" should mean the "[t]he formal right of ownership of property." (Black's Law Dict., *supra*, at p. 1485, col. 1.) By construing the word "title" in context, we conclude "title," as understood in the Policy, can only mean the name of a literary or artistic work.

"Title" appears in both the coverage clause defining advertising liability and the trademark exclusion clause. Nothing in the Policy suggests that these two clauses define "title" differently. Thus, it is reasonable to assume "title" has the same meaning in both clauses. (See *Victoria v. Superior Court* (1985) 40 Cal.3d 734, 741 [222 Cal.Rptr. 1, 710 P.2d 833] [holding that the term "services" has the same meaning throughout the agreement]; see also Civ. Code, § 1641.)

Examining the word "title" in the context of the trademark exclusion clause establishes that "title" can only mean the name of a literary or artistic

---

[5]See also Webster's Collegiate Dictionary (10th ed. 1993) page 1238 (Webster's) ("the distinguishing name of a written, printed, or filmed production" or "a similar distinguishing name of a musical composition or a work of art"); New World Dictionary of the American Language (2d college ed. 1979) page 1492 (New World Dictionary) ("the name of a book, chapter, poem, essay, picture, statue, piece of music, play, movie, etc."); Black's Law Dictionary (6th ed. 1990) page 1485, column 1 ("[t]he title of a book, or any literary composition, is its name").

[6]See also Webster's, *supra*, at page 1238 ("a descriptive name" or "appellation"); New World Dictionary, *supra*, at page 1492 ("a descriptive name or appellation; epithet"); Black's Law Dictionary, *supra*, at page 1485, column 1 ("A mark, style, or designation; a distinctive appellation; the name by which anything is known").

work. The exclusion clause states: "This insurance does not apply . . . with respect to advertising activities, to claim made against the insured for . . . infringement of registered trade mark, service mark or trade name by use thereof as the registered trade mark, service mark or trade name of goods or services sold, offered for sale or advertised, but this shall not relate to titles or slogans . . . ." Interpreted in its ordinary and popular sense, this clause excludes coverage for infringement of a "registered trade mark, service mark or trade name" *unless* that "trade mark, service mark or trade name" is a title or slogan. To be consistent with this interpretation, the definition of "title" cannot subsume the definitions of "trade mark," "service mark," or "trade name" as understood in the Policy.[7] Otherwise, all or part of the exclusion clause becomes meaningless.

Only one definition fits: the name of a literary or artistic work. Because these names can be trademarked, adopting this definition of "title" carves out a limited exception and gives effect to every part of the Policy's trademark exclusion clause.[8] (See *Lutz* v. *De Laurentiis* (1989) 211 Cal.App.3d 1317, 1322 [260 Cal.Rptr. 106] [the title of a book may be a protectible property right]; *Metro Pub., Ltd.* v. *San Jose Mercury News* (9th Cir. 1993) 987 F.2d 637, 640-641 [titles of newspaper and magazine articles may be protectible trademarks].) All the other proposed definitions of "title" fail this test. For example, defining "title" to mean "any name" would abrogate the policy language excluding coverage for trade name infringement because trade names, as understood in the Policy, are the subset of names "used by a

---

[7]As used in the Policy, the terms "trade mark," "service mark" and "trade name" must have separate and distinct meanings. Thus, the term "trade mark" must mean "any word, name, symbol, or device, or any combination thereof . . . [¶] (1) used by a person . . . [¶] . . . [¶] to identify and distinguish his or her *goods* . . . ." (15 U.S.C. § 1127, italics added; see also American Heritage College Dict., *supra*, at p. 1433 ["A name, symbol, or other device identifying a product"]; Webster's, *supra*, at p. 1250 ["a device (as a word) pointing distinctly to the origin or ownership of merchandise"]); the term "service mark" must mean "any word, name, symbol, or device, or any combination thereof . . . [¶] (1) used . . . [¶] . . . [¶] to identify and distinguish the *services* of one person" (15 U.S.C. § 1127, italics added; see also American Heritage College Dict., *supra*, at p. 1246 ["[a] mark used in the sale or advertising of services to distinguish them from the services of others"]; Webster's, *supra*, at p. 1070 ["a mark or device used to identify a service . . . offered to customers"]); and the term "trade name" must mean "any name used by a person to identify his or her *business or vocation*." (15 U.S.C. § 1127, italics added; see also American Heritage College Dict., *supra*, at p. 1433 ["The name by which a business firm operates"]; Webster's, *supra*, at p. 1250 ["the name or style under which a concern does business"].)

[8]Adopting this definition of "title" also gives effect to each term in the coverage clause—which provides coverage for "infringement of copyright, of title or of slogan"—because the name of a literary or artistic work is not protectible by copyright. (See 37 C.F.R. § 202.1(a) (1997) [stating that "works not subject to copyright" include "[w]ords and short phrases such as names, titles, and slogans"]; *Tomlin* v. *Walt Disney Productions* (1971) 18 Cal.App.3d 226, 230 [96 Cal.Rptr. 118] [recognizing that the "title to a literary or musical composition is not protectible by copyright"].)

person to identify his or her business or vocation." (15 U.S.C. § 1127; see also American Heritage College Dict., *supra*, at p. 1433; Webster's, *supra*, at p. 1250.) Broadly interpreting "title" to encompass any legal right to property is even more problematic. Such an interpretation would render the entire exclusion clause meaningless if, as Mez suggests, all marks are a form of legal title.

Efforts by the Palmer defendants to reconcile their proposed definition of "title" with the language of the trademark exclusion clause are unavailing. The Palmer defendants observe that the exclusion clause would still preclude coverage for trade dress infringement if "title" means "any name." This observation, however, does not alter the fact that their proposed definition obviates the exclusion of coverage for trade name infringement in contravention of the rules of contractual interpretation. (See Civ. Code, § 1641.) Likewise, construing the exclusion clause to only exclude coverage of registered "trade marks, service marks and trade names" but not "unregistered" names does not aid the Palmer defendants because they infringed a registered mark. In any event, this construction does not comport with any dictionary definition of "title."

The rule requiring the court to construe all ambiguities against the insurer does not change our conclusion. The mere fact that a word or phrase in a policy may have multiple meanings does not create an ambiguity. (See *Foster-Gardner*, *supra*, 18 Cal.4th at p. 868.) " '[L]anguage in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract.' " (*Bank of the West*, *supra*, 2 Cal.4th at p. 1265, italics omitted, quoting *Producers Dairy Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 916, fn. 7 [226 Cal.Rptr. 558, 718 P.2d 920].) Where, as here, the meaning of the policy term is clear from the context of the policy as a whole, no ambiguity exists. (See *AIU Ins.*, *supra*, 51 Cal.3d at p. 828 [refusing to adopt a broad definition of "damages" that would render a phrase in the policy meaningless].)

In addition, the rule against using subsequent revisions to a policy as an aid in interpreting earlier unrevised versions of that policy is inapplicable. (See *McKee* v. *State Farm Fire & Cas. Co.* (1983) 145 Cal.App.3d 772, 777-778 [193 Cal.Rptr. 745].) The trademark exclusion clause is not a subsequent revision to the policy at issue. It is *part* of the actual policy being interpreted.

 Although other courts interpreting insurance policies have broadly defined "title" to encompass any name or property right, we do not find

these decisions persuasive. Most are inapposite because they involve policies that only contain the coverage clause—and *not* the trademark exclusion clause. (See *American Employ. Ins. Co.* v. *DeLorme Pub. Co.* (D.Me. 1999) 39 F.Supp.2d 64, 78 [defining "title" as "any name"]; *First State Ins. Co.* v. *Alpha Delta Phi Fraternity* (Ill.App.Ct., Nov. 3, 1995, No. 1-94-1050) 1995 WL 901452 at p. *11 [same]; *American Economy Ins. Co.* v. *Reboans, Inc.* (N.D.Cal. 1994) 900 F.Supp. 1246, 1253 [same]; *Union Ins. Co.* v. *The Knife Co., Inc.* (W.D.Ark. 1995) 897 F.Supp. 1213, 1217 [same]; *P.J. Noyes Co.* v. *American Motorists Ins. Co.* (D.N.H. 1994) 855 F.Supp. 492, 494-495 [same]; *J.A. Brundage Plumbing* v. *Massachusetts Bay Ins.* (W.D.N.Y. 1993) 818 F.Supp. 553, 559 [same], vacated after settlement (W.D.N.Y. 1993) 153 F.R.D. 36; see also *Bank One* v. *Breakers Development* (Wis.Ct.App. 1997) 208 Wis.2d 230, 235-236 [559 N.W.2d 911, 913] [defining "title" as a formal right to property]; *Merchants Co.* v. *American Motorists Ins.* (S.D.Miss. 1992) 794 F.Supp. 611, 618 [same]; but see *ShoLodge, Inc.* v. *Travelers Indem. Co. of Illinois* (6th Cir. 1999) 168 F.3d 256, 259 [defining "title" as the name of "a literary or artistic work"]; *Julian* v. *Liberty Mutual Ins. Co.* (1996) 43 Conn.App. 281, 288 [682 A.2d 611, 615] [same]; *Atlantic Mut. Ins. Co.* v. *Brotech Corp.* (E.D.Pa. 1994) 857 F.Supp. 423, 429 [same], affd. (3d Cir. 1995) 60 F.3d 813.) We express no opinion as to the applicability of these decisions to California law and decline to determine the meaning of title in those policies lacking an analogous trademark exclusion clause.

The one decision cited by the Palmer defendants that addresses an insurance policy with language almost identical to the policy at issue here is also distinguishable. In *Touch of Class Imports* v. *Aetna Cas. and Sur. Co.* (S.D.N.Y. 1995) 901 F.Supp. 175, the insured sought indemnification for a money judgment based on its infringement of the mark "Touch of Class." While the court defined "title" as "a name or appellation," it apparently ordered indemnification solely pursuant to the infringement of slogan language of the policy. (*Id.* at p. 177.) Thus, the court's interpretation of "title" is arguably dicta. In any event, we do not find the decision to be persuasive precedent because the court failed to consider the policy language as a whole and provided no analysis whatsoever.

Accordingly, we conclude that the word "title," as understood in the Umbrella Policy, means the name of a literary or artistic work. Because the mark infringed by the Palmer defendants is not the name of a literary or artistic work, the policy provision providing coverage for infringement of title does not require Truck to provide reimbursement.

## B. *Infringement of Slogan*

The Palmer defendants also contend that the "infringement . . . of slogan" language of the coverage clause encompasses the Newhall judgment because Newhall alleged they "utilized" its slogans. We disagree.

■ "[W]hile an insurer has a duty to defend suits which potentially seek covered damages, it has a duty to indemnify only where a judgment has been entered on a theory which is *actually* (not potentially) covered by the policy." (*Collin* v. *American Empire Ins. Co.* (1994) 21 Cal.App.4th 787, 803 [26 Cal.Rptr.2d 391], italics added.) In this case, the jury found the Palmer defendants' "use of the mark VALENCIA" was "likely to cause confusion," "infringing" and "a false representation or a false designation of origin." The jury did not find that the Palmer defendants used Newhall's slogans. Moreover, the jury based its award of damages *solely* on the profits realized from the infringing use of the Valencia mark and not from any alleged use of Newhall's slogans. Finally, the district court entered judgment on counts 1 and 2 of Newhall's complaint based *solely* on the jury's findings. Thus, the Newhall judgment was entered on the theory the Palmer defendants infringed the Valencia mark—and not on the theory they infringed Newhall's slogans. (See *Purcell* v. *Seguin State Bank and Trust Co.* (5th Cir. 1993) 999 F.2d 950, 955 [there was no court finding on an issue that was not necessary to support the judgment on the special verdict].)

■ The mere fact that Newhall used the mark Valencia in a slogan does not bring the judgment within the scope of coverage for infringement of slogan. A slogan is "a brief attention-getting *phrase* used in advertising or promotion" (Webster's, *supra*, at p. 1105, italics added) or "[a] *phrase* used repeatedly, as in promotion" (American Heritage College Dict., *supra*, at p. 1282, italics added). Thus, the infringing use of a trademark that is merely a word in a phrase used as a slogan is not the same as the infringing use of a slogan. (See *Houston General Ins. Co.* v. *BSM Corp.* (N.D.Ill., Apr. 14, 1993, No. 92-C-6516) 1993 U.S.Dist. Lexis 4725 at p. *18 [the name "IBM" is not a slogan].) While there may be instances where the name of a business, product or service, by itself, is also used as a slogan, the name "Valencia" was not.[9]

Accordingly, the policy provision providing coverage for infringement of slogan does not cover the Newhall judgment. Because the Palmer defendants offer no other basis for coverage, we conclude Truck has no duty to reimburse them for the settlement proceeds.

---

[9]The only Newhall slogan identified in the record is "Come Home to VALENCIA."

## III. DISPOSITION

For the foregoing reasons, we reverse the judgment of the Court of Appeal and remand for further proceedings consistent with this opinion.

George, C. J., Mosk, J., Kennard, J., Baxter, J., Werdegar, J., and Chin, J., concurred.