Filed 4/21/23  Grebow v. Fire Insurance Exchange CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| ARTHUR GREBOW et al., | B320267 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. 20STCV49903) |
| FIRE INSURANCE EXCHANGE, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael P. Linfield, Judge.  Affirmed.

Grebow & Rubin and Arthur Grebow for Plaintiffs and Appellants.

Woolls Peer Dollinger & Scher, Gregory B. Scher and Hugh Douglas Galt for Defendant and Respondent.

_____

In this insurance coverage action concerning the theft of certain personal property, plaintiffs and appellants Arthur Grebow and Helen Grebow (collectively plaintiffs) appeal from the summary judgment entered in favor of defendant and respondent Fire Insurance Exchange (FIE) (erroneously sued as Farmers Insurance Exchange). We affirm the judgment.

**FACTUAL BACKGROUND**

Plaintiffs own a home in Tarzana, California. The home was burglarized on February 22, 2020. Sterling silver with an estimated value of $85,079.90, watches with an estimated value of $16,265, and jewelry with an estimated value of $2,512 were among the items stolen. None of the stolen items were recovered.

**The policy**

FIE issued to plaintiffs a homeowners policy that was in effect at the time of the theft. The policy provided coverage for, among other things, loss of personal property (Coverage C) up to a stated limit of $1,171,500. The policy prescribed special limits on certain types of personal property: "Special limits of insurance apply to certain types of personal property. The limits shown below do not increase the Coverage C stated limit. The limit for each numbered group is the total limit for any one loss event for all property in that group. The lowest applicable special limit shall apply to personal property that falls into more than one group."

As relevant here, section I.8 of the policy prescribed a $3,000 limit on theft of silverware: "8. **Silverware, gold ware, platinumware and pewter ware.** [¶] $3,000 limit on theft of silverware, gold ware, platinumware and pewter ware. This includes articles for which any such metal represents the principal value."

Section I.3 of the policy provided, subject to certain exceptions, contents replacement cost coverage for specified types of personal property under Coverage C: "3. **Contents Replacement Cost – Coverage C.** [¶] a. If the Declarations or renewal notice indicates that Contents Replacement Cost coverage applies, then covered loss or

2

damage to covered personal property, except for those types of personal property described in subsection c. below, will be settled at replacement cost without deduction for depreciation for an amount that is reasonably necessary to repair or replace the damaged property, but for no more than the smallest of the following:  [¶] (1) any **stated limit** of insurance under this policy that applies to the property; [¶] (2) the replacement cost of that part of the property damaged for equivalent manufacture or construction with materials of like kind and quality, determined as of the time of loss;  [¶] (3) the reasonable amount actually and necessarily spent to repair or replace damage to the property; or (4) [¶] the loss to the interest of the **insured** in the property."

Subsection b. of section I.3 excepts from the policy's contents replacement cost settlement provisions certain types of personal property listed in subsection c.:  "b.  We will pay no more than the **actual cash value** of the property at the time of loss until actual repair or replacement is completed.  Except for those types of personal property described in subsection c. below, you may collect any additional amount on a replacement cost basis.  To do so the property must have been repaired or replaced in accordance with and subject to Section I – Property Conditions, Replacement Cost Settlement."

Antiques are among the types of personal property listed in subsection c. of section I.3 of the policy and are therefore excepted from the policy's  general contents replacement cost settlement provisions.  Subsection c. states that antiques (and other listed personal property) will be settled as specified in subsection d.:  "c.  Covered loss or damage to the following types of personal property, whether or not attached to buildings or any structure will be settled as shown below in subsection d:  [¶]  . . .  [¶] (5) antiques, including by way of example but not limited to furniture, metalware, tools toys, and bric a brac . . . ."

3

Subsection d. states that antiques (and other types of property listed in subsection c.) are subject to any limit of insurance applicable to such property under the policy: [¶] "d. The covered types of personal property shown above in subsection c. will be settled for no more than the smallest of the following: [¶] (1) **actual cash value**; [¶] (2) fair market value; [¶] (3) any **stated limit** or other limit of insurance under this policy that applies to the property; or [¶] (4) the reasonable amount actually and necessarily spent to repair or replace loss or damage to the property."

**Plaintiffs' claim**

Plaintiffs reported the theft to FIE on February 24, 2020. In March 2020, FIE sent plaintiffs a check in the amount of $8,593.29 as payment for the stolen personal property.

On March 16, 2020, plaintiffs sent FIE a list of the stolen personal property and their estimated value. The stolen property included Tiffany silverware manufactured in 1910 with an estimated value of $85,079.90 and several jewelry pieces with an estimated value of $14,722.94, bringing the total estimated value of the stolen property to $99,801.84. Plaintiffs claimed the stolen items were antiques covered under the policy's contents replacement cost coverage.

FIE's claims adjuster, Tiffany Johnson, informed plaintiffs on March 24, 2020, that although the stolen items had a replacement cost value of $99,801.84, the stated policy limits for jewelry and silverware applied, and FIE would reimburse plaintiffs for these items only in the amount of $8,593.29. Plaintiffs disagreed with FIE's determination and the parties were unable to resolve the dispute.

## PROCEDURAL HISTORY

Plaintiffs filed this action against FIE on December 31, 2020, alleging breach of contract and tortious breach of insurance contract. FIE filed its answer on February 8, 2021.

The parties filed cross-motions for summary judgment, which were both heard on February 15, 2022. The trial court denied

plaintiffs' motion and granted FIE's motion.  Judgment was entered in FIE's favor, and this appeal followed.

## DISCUSSION

## I.  Standard of review

The standard of review for an order granting or denying a motion for summary judgment is de novo.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.)  The trial court's stated reasons for granting summary adjudication are not binding on the reviewing court, which reviews the trial court's ruling, not its rationale.  (*Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878.)

## II.  Applicable legal principles

" 'Interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation.  [Citation.]  "The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties.  'Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation.  [Citation.]  Such intent is to be inferred, if possible, solely from the written provisions of the contract.  [Citation.]  The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" [citation], controls judicial interpretation.' " ' " (*TRB Investments, Inc. v. Fireman's Fund Ins. Co.* (2006) 40 Cal.4th 19, 27.)  Policy provisions must be interpreted in context, giving effect to every part of the policy with " 'each clause helping to interpret the other.' " (*Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115 (*Palmer*).)

If the language of the policy is clear and explicit, it governs.  (*Foster-Gardner, Inc. v. National Union Fire Ins. Co.* (1998) 18 Cal.4th 857, 868.)  " ' "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable."  [Citations.]  The fact that a term is not defined in the policies does not make it ambiguous.  [Citations.]  Nor does "[d]isagreement concerning the meaning of a phrase," or " 'the fact that a word or phrase isolated

5

from its context is susceptible of more than one meaning.' " [Citation.] " '[L]anguage in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract.' " ' " (*Powerine Oil Co., Inc. v. Superior Court* (2005) 37 Cal.4th 377, 390–391 (*Powerine*).)

The insured bears the burden of bringing a claim within the basic scope of coverage of a policy's insuring agreement, and a court will not indulge a forced interpretation of the insuring agreement to bring a claim within the scope of its coverage. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 16.)

## III. Replacement cost coverage

Plaintiffs contend section I.3.c.(5) of the policy extends guaranteed contents replacement cost coverage for "antiques" including "metalware" and that their stolen silverware are antiques covered under this provision.

The purpose of replacement cost coverage, such as that provided by section I.3.c.(5), is "to compensate the insured for the shortfall in coverage that results from rebuilding [or replacing damaged items] under a policy that pays only for actual cash value (i.e., reflecting property in a depreciated condition)." (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2022) ¶ 6:359.1.) "Under a replacement cost policy, the measure of indemnity is the amount it would cost the insured to repair, rebuild or replace the damaged property, *without any deduction for depreciation*." (*Id.* at ¶ 6:359.2.) Replacement cost coverage "necessarily places the insured in a better position than payment of actual cash value, since there is no deduction for depreciation." (*Id.* at ¶ 6:359.1.)

"There are three main forms of replacement cost coverage: *replacement* cost, *extended replacement* cost and *guaranteed replacement* cost." (Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra*, ¶ 6:359.2.) Replacement cost coverage provides for the cost to repair or replace the damaged property up to the stated policy limit. (*Id.* at ¶ 6:359.3.) "Extended replacement cost coverage provides indemnity up to a specified percentage (e.g., 10%) or specific

6

dollar amount above the policy limit." (*Id.* at ¶ 6:359.4, italics omitted.) Guaranteed replacement cost coverage covers the full cost to repair or replace the damaged property, without regard to the stated policy limit. (*Id.* at ¶ 6:359.5.)

Section I.3.c.(5) provides replacement cost coverage, and not, as plaintiffs contend, guaranteed replacement cost coverage for their stolen silverware.[1] There is no language in section I.3.c.(5) or elsewhere in the policy that guarantees replacement cost coverage in excess of the applicable policy limits. (Compare *Everett v. State Farm General Ins. Co.* (2008) 162 Cal.App.4th 649, 659–660 [policy included no language guaranteeing replacement cost coverage] with *Desai v. Farmers Ins. Exchange* (1996) 47 Cal.App.4th 1110, 1116 [policy stated, " 'If a Replacement Cost provision forms a part of this policy, we guarantee that the limits of insurance meet the replacement cost requirements' "].)

The policy contains no language that increases the stated limit for silverware, even if such items may be classified as antiques under section I.3.c. To the contrary, section I.3.d. of the contents replacement cost section of the policy expressly states that "[t]he covered types of personal property shown above in subsection c. [which includes antiques] will be settled for no more than the *smallest* of the following: [¶] (1) **actual cash value**; [¶] (2) fair market value; [¶] (3) any stated limit or other limit of insurance under this policy that applies to the property; or [¶] (4) the reasonable amount actually and necessarily spent to repair or replace loss or damage to the property." (Italics added.) Section I.3.e. states that "[t]he Coverage C **stated limit** is the most we will pay regardless of the number of items of personal property which are involved in a loss event." The policy's introductory language for property insurance coverage similarly states that "[s]ettlements,

---

[1] In this appeal, plaintiffs do not challenge application of the $5,000 policy limit to their claim for theft of antique jewelry and watches.

7

including replacement cost settlements, and coverages under this policy, are subject to the limits of insurance stated herein." The stated policy limit for theft of silverware is $3,000. FIE paid plaintiffs the stated limit for those items.

Section I.3.c. contains no language that supersedes any policy limit applicable to silverware. That section must therefore be read together with subsection 8 under section I, Coverage C (Personal Property) of the policy, which imposes a $3,000 total limit on theft of silverware. (*Palmer, supra*, 21 Cal.4th at p. 1115 [insurance policy provisions must be interpreted in context, giving effect to every part of the policy].)

Subsections 3.c.(5) and 3.d. of section I, read together with the other provisions of the policy, are not ambiguous. Under the plain language of the policy, FIE's obligation to indemnify plaintiffs for the theft of their silverware is subject to the policy limit applicable to those items of personal property, regardless of the antique nature of those items. (*Powerine, supra*, 37 Cal.4th at pp. 390–391.)

Applying the policy limit for silverware to plaintiffs' theft claim does not, as plaintiffs contend, improperly conflate personal property coverage with replacement cost coverage. Replacement cost coverage is a subset of the personal property coverage afforded under the policy. The policy's personal property coverage (Coverage C) insures "personal property owned or used by an **insured** anywhere in the world." That coverage applies to all of plaintiffs' personal property, including antiques. The policy's contents replacement cost coverage expressly states that it applies only to property that comes within Coverage C. The contents replacement cost coverage for antiques further states that "any **stated limit** or other limit of insurance under this policy that applies to the property" will apply if that amount is smaller than the actual cash value, fair market value, or amount actually spent to replace the property. FIE did not breach the insurance contract or act in bad faith by reimbursing plaintiffs for the theft of their antique silverware in the amount of the $3,000 limit applicable to silverware.

8

We reject plaintiffs' contention that their stolen silverware falls exclusively into the "antiques" category of personal property covered under the policy and is not subject to the $3,000 policy limit applicable to "silverware." The plain language of the policy contemplates that certain types of property may fall into multiple categories of covered personal property to which different policy limits may apply. In such cases, the "Special limits on Certain Personal Property" provision under Coverage C of the policy expressly states that "the lowest applicable special limit shall apply to personal property that falls into more than one group."

*Cordner v. United States* (9th Cir. 1982) 671 F.2d 367 and *Joslin v. United States* (10th Cir. 1981) 666 F.2d 1306, which plaintiffs cite as support for their position, are inapposite. Those cases address whether gold and silver coins should be considered "money" and valued for tax purposes at their face value, or whether the coins should be classified as "property" and valued at their higher "numismatic" value, i.e., fair market value in excess of their face value. (*Cordner, supra,* 671 F.2d at p. 367; *Joslin, supra,* 666 F.2d at p. 1307.) The courts in both cases held that the higher numismatic value applied, given the value of the coins to collectors, or the intrinsic worth of their contents. (*Cordner,* at p. 367; *Joslin,* at p. 1307.) Neither *Cordner* nor *Joslin* involved the measure of indemnity under a property insurance policy or interpretation of a policy provision extending contents replacement cost coverage.

Plaintiffs' stolen silverware is covered under the contents replacement cost coverage for antiques provided in sections I.3.c.(5) and I.3.d. of the policy and is subject to the $3,000 special limit on silverware specified in section I.8. The trial court did not err by granting summary judgment in FIE's favor.

9

## DISPOSITION

The judgment is affirmed. Fire Insurance Exchange is awarded its costs on appeal.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


HOFFSTADT, J.