NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAR 13 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



CITY OF LOS ANGELES, acting by and through its Board of Harbor Commissioners,

    Plaintiff-counter-
    defendant-Appellant,

  v.

TRAVELERS INDEMNITY COMPANY; TRAVELERS CASUALTY AND SURETY COMPANY, FKA Aetna Casualty and Surety Company,

    Defendants-counter-
    claimants-Appellees,

UNITED NATIONAL INSURANCE COMPANY,

    Defendant-Appellee.

No. 22-56162

D.C. No.
2:22-cv-00130-GW-PD

MEMORANDUM*

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted February 14, 2024
Pasadena, California

Before: W. FLETCHER, NGUYEN, and LEE, Circuit Judges.

---

    * This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

In 2019, the City of Los Angeles obtained a roughly $230,000 judgment against Wilmington Marine, a boatyard operator that had leased a site at the Port of Los Angeles from the City. In awarding judgment, the California state superior court found that Wilmington had spent fifty years allowing scrapings of boat paint, as well as other toxic materials, to fall onto the pavement above the Los Angeles harbor without attempting to contain the paint waste before it washed into the harbor. Wilmington—which the city knew was defunct when the lawsuit was filed—could not pay the award, so the city sought indemnification from Wilmington's insurers, Travelers and United National, in federal court. The district court granted the insurers summary judgment based on policy exclusions that barred coverage for pollution-related property damage unless the damage was caused by "sudden and accidental discharges." We have jurisdiction under 28 U.S.C. § 1291 and affirm.

1. <u>The district court did not err in limiting its analysis to the underlying superior court judgment</u>. The City argues that the district court erred in restricting its analysis to the evidence introduced in support of the superior court judgment. In the City's view, because the underlying judgment was concerned with liability and not indemnity, the City should have been permitted to offer new evidence to prove that Wilmington's actions were sudden and accidental. Under California law, the duty to indemnify arises only "where a judgment has been entered on a theory which is *actually* (not potentially) covered by" the underlying insurance policy. *Palmer v.*

2

*Truck Ins. Exch.*, 988 P.2d 568, 576 (Cal. 1999) (quoting *Collin v. Am. Empire Ins. Co.*, 21 Cal. App. 4th 787, 803 (1994)). To determine whether an insurance policy covers a judgment, a court must "compar[e]" the judgment with the terms of the insurance policy. *Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 896 (9th Cir. 1996). The district court thus did not err in comparing the superior court judgment with the insurance policies and excluding the City's new evidence. Further, the district court excluded proffered new evidence because it conflicted with evidence introduced by the City in the state court case. The district court did not err in so doing.

2. <u>The district court did not err in determining that the relevant discharges were the initial waste deposits.</u> The City argues that, under *State v. Allstate Insurance Co.*, the district court was required to find that the relevant discharges here were the "escape[s]" of pollutants to the water. 201 P.3d 1147, 1154–55 (Cal. 2009). *Allstate Insurance* holds that the relevant discharges are those on which liability was based. *Id.* Here, the superior court held Wilmington liable based on its decades-long failure to contain the pollutants and waste it dropped onto the pavement above the harbor. The district court thus did not err in concluding that these discharges—on which liability was based—were the relevant discharges for indemnity purposes.

3

3. The district court did not err in concluding that the discharges here were neither sudden nor accidental. Under California law, "sudden and accidental discharges" must be "'abrupt,' 'unintended, and unexpected.'" *Travelers Cas. & Sur. Co. v. Super. Ct.*, 63 Cal. App. 4th 1440, 1458 (1998). Intentional discharges and discharges that occur over a long period of time are not "sudden and accidental." *See Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715, 754–55 (1993).

The City presented extensive evidence to the superior court that the discharges here resulted from Wilmington's longstanding business practices and intentional acts, not from unintended or unexpected events. For example, the City's witnesses testified that Wilmington received—and disregarded—numerous environmental audits instructing it to adopt containment measures. One witness testified that Wilmington allowed waste to flow directly from the pavement to the harbor. Another testified that Wilmington refused to "sweep" or "clean up" waste, choosing instead to let it "wash[] right into the mud." And the City likened Wilmington's waste management practices to someone fertilizing their lawn, arguing that Wilmington "spread" waste around without even "wait[ing] for rain" to wash it into the water. Wilmington's liability was not based on sudden and accidental discharges, and the district court did not err in granting the insurers summary judgment.

**AFFIRMED.**

4